UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JULIE WEGER and MARY MEGHAN MURPHY, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>CITY OF LADUE, WILLIAM BALDWIN, )<br>and DONALD WICKENHAUSER )<br>)<br>Defendants. ) | Case No. 4:04-cv-683 SNL |

## ORDER

Plaintiffs Julie Weger and Mary Murphy, female dispatchers for the City of Ladue's Police Department, filed this sexual harassment suit against Defendants City of Ladue, their supervisor William Baldwin, and Chief of Police Donald Wickenhauser. Plaintiffs claim that the Defendants created a hostile work environment and retaliated against them, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (2004), the Missouri Human Rights Act, Mo. Rev. Stat. §§ 213.010 *et seq.*, and the Fourteenth Amendment. Plaintiffs contend that their supervisor sexually harassed them, and when Plaintiffs reported this harassment, retaliatory actions were taken against them. This is before the Court on the Defendants' Motion for Summary Judgment (#53), filed June 1, 2005.

## SUMMARY JUDGMENT STANDARD

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to

give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those cases that really do raise genuine issues of material fact." *City of Mt. Pleasant v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed. R. Civ. P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 467, 82 S. Ct. 486, 7 L. Ed. 2d 458 (1962). The burden is on the moving party. *City of Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion, and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson*

*Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to an examination of the facts.

## FACTUAL BACKGROUND

The facts are largely undisputed.[1] The Ladue Police Department ("Department") hired Plaintiffs Weger and Murphy as communications officers in 1999, and has continued to employ them until the present day. Towards the end of 2000, Baldwin, who was then a captain with the Department, became the uniformed supervisor for the communications department. Baldwin was also the internal affairs investigator for the Department, a friend of Chief Wickenhauser, and second in command. Although Baldwin held a position of power and respect within the Department, his attitude towards women was sophomoric and inappropriate.

Baldwin's crass behavior began before Plaintiffs were hired. Baldwin conducted Murphy's job interview and background investigation in 1999. At this interview, Baldwin inquired about a period of medical leave at Murphy's former employment. Murphy disclosed that she required medical leave for breast reduction surgery. During Murphy's background investigation, Baldwin told Sergeant Wagner about Murphy's surgery while "giggling about it," and told Sergeant Wagner and Lieutenant Baker that Murphy was "not much to look at but she has big tits."

---

[1]Defendants do not admit that the facts as stated by Plaintiffs are true. However, for the purposes of this motion, Defendants argue that even if the facts alleged by Plaintiffs are true, they still cannot maintain a cause of action for sexual harassment or retaliation. Therefore the Court bases its analysis on Plaintiffs' factual assertions.

Baldwin engaged in unwanted touchings of the Plaintiffs. These touchings were a constant in Plaintiffs' employment. They became more prevalent from the fall of 2001 to the fall of 2002, occurring on an almost daily basis. Murphy and Weger complain that Baldwin would tickle them, touch their hair and scalp, massage their shoulders and legs, and attempt to hold their hands. Baldwin would chase them around the communications room as if he were going to tickle them, and block the doors when they tried to escape. Baldwin's treatment of Murphy was especially boorish. He would massage her neck and upper chest underneath her uniform, right above her breasts, and would grab Murphy and squeezed her close, so that her breasts were pressed up against his chest. On one occasion, after Murphy had a tooth extracted, Baldwin attempted to caress her cheek while leaning in so close that Murphy feared he would try to kiss her. Throughout all of this, Plaintiffs persistently asked Baldwin to cease this behavior, but he ignored their requests.

In addition to the unwanted touching, Baldwin made sexual comments about the Plaintiffs and other women. Baldwin told Murphy that it would be difficult to fit her for a bullet proof vest, insinuating that her breasts were too large for the vests. He repeatedly complimented Murphy on her uniform sweaters because they fit tightly, and requested that she wear skirts to show off her legs. Baldwin would enquire about Murphy's sexual conduct after work, asking if she "got any," "gotten lucky," or "hooked up" over the weekend. Pl's Stmt of Facts ¶ 46. And when women walked through the lobby, Baldwin often commented about their "tits and asses," or made barking sounds when he found the women to be unattractive. Pl's Stmt of Facts ¶ 47.

On November 5, 2002, Murphy reported Baldwin's conduct to Lieutenant Baker, stating that she was "sick and tired of Captain Baldwin putting his hands on her." Pl's Stmt of Facts ¶ 53. This

4

was the first time Murphy complained about Baldwin's behavior to any member of the Department. Baker reported Murphy's complaint to Chief Wickenhauser the following day. Wickenhauser interviewed Murphy on November 6th, and she reported some of the incidents described above. After the interview, Wickenhauser contacted Baldwin and told him not to enter the communications room or have contact with any communications personnel until further notice. Wickenhauser then began an investigation of Murphy's complaint.

As part of the investigation, Wickenhauser interviewed Detective Schmitz, Kristin Goin, Julie Weger, Sergeant Wagner, Lieutenant Baker, Officer Bonney, Pat Allison, Captain Baldwin, and the remaining communications personnel. Several of those interviewed reported witnessing Baldwin act inappropriately towards Murphy and three other female employees: Weger, Allison, and Goin.[2] During the interviews, Wickenhauser informed some of the witnesses that they should consider retaining an attorney to defend themselves, insinuating that Baldwin could sue them for slander. Wickenhauser then interviewed Weger, Goin, and Allison to substantiate the witnesses' reports of harassing behavior. Allison and Goin denied being the subject of any harassment, but Weger substantiated Murphy's claims. She told Wickenhauser that Baldwin tried to hug her, and had touched or rubbed her shoulders, neck, and arms on many occasions. Weger joined Murphy in her complaint against Baldwin.

---

[2]Officer Bonney saw Baldwin sneak up behind Murphy, grab her around the waist, and tickle her. Officer Bonney and Sergeant Wagner saw Baldwin rubbing Murphy's shoulders while escorting her down the hallway towards Wickenhauser's office. Detective Norman saw Baldwin with his arm around Murphy while she was sitting at her desk.

Detective Schmitz, and Lieutenant Baker also reported seeing Baldwin tickling and/or massaging Pat Allison, Plaintiffs' direct supervisor, and Kristin Goin, a dispatcher in the communications office. Because Allison and Goin deny being subject to any harassment, this is irrelevant to the Court's inquiry.

On November 19, 2002, Wickenhauser completed his investigation, and found that Baldwin had not harassed Murphy or Weger. Instead, he found that Baldwin touched the shoulders and arms of male and female employees alike while engaging them in conversation. He believed this touching was meant to be innocuous, but that Murphy and Weger found it offensive. He told Baldwin to cease touching the shoulders and arms of any employee. Baldwin was further instructed that any substantiated allegations of harassment, or any retaliation against complainants or witnesses, would result in his immediate discharge. Wickenhauser refused to give Plaintiffs the results of his investigation, but shared all the information with Baldwin, including the names and statements of the witnesses.

Although Baldwin ceased his harassment, Plaintiffs' began to feel retaliated against after the investigation. On November 21, 2002, Wickenhauser issued directives to the Department. They stated that: (1) not more than two detectives can eat lunch together; (2) detectives must call out their locations on the radio when they leave the Department; (3) officers are no longer allowed to enter the communications area; (4) the pass on pad and trays are moved from communications to the rear kitchenette area of communications; and (5) the communications officers are no longer allowed to stop by or take breaks in the detective bureau. Plaintiffs felt that these directives, although applicable to the entire Department, were issued in retaliation for their complaint. The directives made it difficult to interact with other employees for social and work related purposes. Plaintiffs began to feel ostracized from their co-workers. Officers became indifferent to them, and Wickenhauser began ignoring them.

Baldwin was permanently removed as Plaintiffs' supervisor, but he still maintained a position of authority over them, remaining head of internal affairs and serving as acting chief when Wickenhauser was out. Baldwin began coming into the communications room despite Wickenhauser's directive to the contrary. Although Baldwin always had a work related reason for his presence and did not harass the Plaintiffs, they believed Baldwin came into the communications area to assert his power over them. These instances made the Plaintiffs uncomfortable.

Plaintiffs also complained of problems with the communications supervisor, Pat Allison, who began taking more detailed notes on the Plaintiffs' work activities after they filed their complaint. These notes were neutral in nature, detailing positive and negative events, sick days, and requests for leave. And on March 5, 2003 Wickenhauser conducted Weger's performance review.[3] She received the highest possible marks in all but two categories, quality of work and personal relations, for which she received above standard and standard marks respectively.

Plaintiffs brought their charges before the Equal Employment Opportunity Commission, which found sufficient evidence to support Plaintiffs' claim of sexual harassment but not to support their retaliation claims, and directed the parties to begin settlement negotiations. The matter was not resolved. Plaintiffs exhausted their administrative remedies, and were issued a right to sue letter. Plaintiffs filed suit on June 2, 2004. On June 1, 2005, Defendants filed a Motion for Summary Judgment. Responsive pleadings have been filed in excess, and this Motion is ripe for judgment.

---

[3]Plaintiffs assert that Wickenhauser also conducted Murphy's performance review at that time, but the performance review entered into evidence was from the year 2004.

## DISCUSSION

Defendants move for summary judgment, arguing that Plaintiffs have not established a *prima facie* case of hostile work environment sexual harassment or of retaliation under Title VII, the Missouri Human Rights Act (MHRA), or § 1983. Because Title VII, the MHRA, and § 1983 claims are subject to the same analysis, the Court will analyze Plaintiffs' claims simultaneously. *See LeGrand v. Area Res. for Cmty. & Human Servs.*, 394 F.3d 1098, 1101 (8th Cir. 2005); *Wright v. Rolette County*, 417 F.3d 879, 884-85 (8th Cir. 2005).

### I. Hostile Work Environment

To establish a *prima facie* claim of hostile work environment, a plaintiff must show: "1) the employee is a member of a protected group; 2) she was subject to unwelcome harassment; 3) there was a causal nexus between the harassment and her membership in the protected group; [and] 4) the harassment affected a term, condition, or privilege of employment ...." *Turner v. Gonzales*, 421 F.3d 688, 695 (8th Cir. 2005). From the facts stated above, it is clear that Plaintiffs have met the first three elements of their *prima facie* case – women are a protected group, Baldwin's unwanted touching and inappropriate remarks qualify as unwelcome harassment, and this harassment occurred because Weger and Murphy are women.[4] Assuming, *arguendo*, that the harassment was sufficiently

---

[4] Despite this issue's apparent clarity, Defendants argue that Plaintiffs did not establish the third element – that the harassment had a causal connection to Plaintiffs' sex. In making this determination, "[t]he fundamental issue is whether members of one sex are subjected to unfavorable conditions of employment that the members of the opposite sex are not." *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 933 (8th Cir. 2002). Defendants posture that because Baldwin would touch a man's arm or shoulder while shaking his hand, he treated members of both sexes equally, and therefore the harassment was not based on sex. This argument is without merit.

8

severe to alter a term or condition of Plaintiffs' employment, the Court will determine whether Defendants established an affirmative defense to suit.

When an employee is sexually harassed by a supervisor, the employer is vicariously liable for the harassment unless it can establish the affirmative defense set forth in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and *Faragher v. Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Under the *Ellerth/Faragher* defense, "[i]f no tangible employment action ... has occurred, the employer is liable for sexual harassment by its employees only 'if it knew or should have known about the conduct and failed to stop it.'" *Okruhlik v. Univ. of Ark.*, 395 F.3d 872, 881 (8th Cir. 2005) (quoting *Ellerth*, 524 U.S. at 759). To establish this affirmative defense, the Defendants must prove by a preponderance of the evidence: "[1] that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and [2] that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Pa. State Police v. Suders*, 542 U.S. 129, 137-38, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004); *see also Williams v. Mo. Dept. of Mental Health*, 407 F.3d 972, 975-76 (8th Cir. 2005).

---

Because Baldwin did not tickle men, play with their hair, or massage their upper chests, the harassment occurred solely because Weger and Murphy were women.

Defendants further argue that Murphy undermined her claim by stating that some of Baldwin's actions were motivated by "power." It is common knowledge that many sex crimes are motivated by a perpetrator's desire to exert power and control over the victim. Unless Defendants are prepared to argue that rape would not constitute sexual harassment, the Court will consider their argument no further.

Defendants must first prove that the Department exercised reasonable care to prevent and promptly correct any sexually harassing behavior. As a preventative measure, the Department has a strict anti-harassment policy. This policy is located in the Ladue Police Department Manual, which is given to all employees. It requires that supervisors monitor the work environment for any signs of harassment and stop any observed acts of harassment. The policy details a comprehensive complaint procedure, under which employees suffering from harassment are to document and report all incidents to their supervisor as soon as possible. If filing a complaint with the employee's supervisor is impractical, he or she is directed to file a complaint with another supervisor, or the Chief of Police. And if the complaint is against the Chief, the employee may file her complaint with the Mayor. The policy states that a supervisor must immediately limit the work contact between the complainant and the alleged harasser upon receiving a harassment complaint. The Chief is required to investigate the charge, determine whether other employees also suffered from harassment, and whether other employees participated in or encouraged the harassment. Finally, the policy protects employees from adverse actions following the complaint with non-retaliation and zero tolerance provisions. Ladue Police Dept. Manual, 61-63.

Plaintiffs argue that the Department's policy was ineffective, but the evidence speaks to the contrary. Murphy had two main supervisors – Allison and Baldwin. She clearly could not report the harassment to Baldwin, and she did not feel comfortable filing a report with Allison because she believed Allison was having an affair with Baldwin. Instead, Murphy made her complaint to Lieutenant Baker, who informed Wickenhauser the following day. Wickenhauser launched an investigation and informed Baldwin that he was not to enter the communications room or have any further contact with the communications personnel until Murphy's complaint was resolved. Baldwin

followed these orders. Although Wickenhauser's investigation did suffer from significant flaws,[5] the harassment ended the day Murphy made her complaint. This is a testament to the Department's ability to promptly respond to sexual harassment complaints.

Plaintiffs argue that the Department's response was not prompt because supervisors and employees knew about the harassment, and their knowledge should be imputed to the Department. According to *Sims v. Health Midwest Physician Servs. Corp.*, 196 F.3d 915 (8th Cir. 1999), if sexual harassment comes to the attention of someone who has a duty to report the harassment, that knowledge may be imputed to employer. Department employees witnessed the following incidents of harassment:[6] (1) Officer Bonney saw Baldwin tickle Murphy and follow her with his hands outstretched; (2) Detective Norman saw Baldwin with his arm around Murphy's shoulder, leaning close to her face; (3) Sergeant Wagner and Officer Bonney saw Baldwin massaging Murphy's shoulders; (4) Detective Lucas saw Baldwin rub Weger's shoulders; (5) Baldwin told Sergeant Wagner that Murphy had a breast reduction; and (6) Baldwin told Sergeant Wagner and Lieutenant Baker that Murphy was not much to look at but had big tits. Because these six occurrences happened over a prolonged period of time, and no single officer saw more than three incidents of inappropriate conduct, the witnessed incidents were insufficient to put a Department employee on notice that

---

[5]Wickenhauser found, against the weight of the evidence, that Baldwin did not harass Murphy and Weger. In addition, he dealt harshly with witnesses who buttressed Plaintiffs claims, advising them that Baldwin could file suit for slander.

[6]Plaintiffs also describe incidents where employees witnessed Baldwin tickling or massaging Goin and Allison. Both Goin and Allison denied that Baldwin ever touched them inappropriately. For an act to qualify as sexual harassment, the act must be unwelcome. *See* 29 C.F.R. § 1604.11. Because Goin and Allison did not feel harassed by Baldwin, these incidents are irrelevant to the Court's analysis. To find otherwise could hold an employer liable for consensual flirtations in the workplace.

Baldwin was harassing Murphy or Weger. The Department did not have knowledge of Baldwin's harassment, constructive or otherwise, until Murphy reported it on November 5, 2002. Therefore, the Defendants have proven the first element of the *Ellerth/Faragher* defense – that the Department exercised reasonable care to prevent and correct promptly any sexually harassing behavior.

Defendants have also met their burden as to the second element of the *Ellerth/Faragher* defense – that Plaintiffs unreasonably failed to take advantage of any preventative or corrective opportunities provided by the Department. Murphy waited over a year before reporting the harassment, and Weger did not come forward until she was interviewed regarding Murphy's claim. Although Plaintiffs may have felt uncomfortable reporting Baldwin because of his friendship with Wickenhauser, "'an employee's subjective fears of confrontation, unpleasantness [ ] or retaliation do not alleviate the employee's duty under *Ellerth* to alert the employer to the allegedly hostile environment.'" *Williams v. Mo. Dept. of Mental Health*, 407 F.3d 972, 977 (8th Cir. 2005) (quoting *Shaw v. AutoZone, Inc.*, 180 F.3d 806, 813 (7th Cir.1999)). Defendants have shown, by a preponderance of the evidence, that they are protected by the *Ellerth/Faragher* affirmative defense. The Department "fulfilled the 'primary objective' of Title VII, which is 'not to provide redress but to avoid harm.'" *Jackson v. Ark. Dept. of Educ.*, 272 F.3d 1020, 1025 (8th Cir. 2001) (quoting *Faragher*, 524 U.S. at 806). Therefore Plaintiffs cannot recover under a theory of hostile work environment sexual harassment.

## II.   Retaliation[7]

---

[7]Plaintiffs brought suit for retaliation under § 1983, asserting a violation of their right to equal protection under the law. "However, a pure or generic retaliation claim simply does not implicate the Equal Protection Clause." *Strouss v. Mich. Dept. of Corrections*, 75 F. Supp. 2d

To establish a *prima facie* case of retaliation, Plaintiffs must show: (1) that they engaged in a statutorily protected activity; (2) suffered an adverse employment action; and (3) that there was a causal connection between the adverse employment action and the protected activity. *Peterson v. Scott County*, 406 F.3d 515, 524 (8th Cir. 2005). It is undisputed that Plaintiffs engaged in a statutorily protected activity, but they did not suffer any adverse employment action.

An adverse employment action must have a materially adverse impact on the terms or conditions of the plaintiff's employment. *Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 684 (8th Cir. 2001); *Bradley v. Widnall*, 232 F.3d 626, 632 (8th Cir. 2000). An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. *Cooney v. Union Pac. R.R. Co.*, 258 F.3d 731, 734 (8th Cir. 2001). Termination, reduction in pay or benefits, and changes in employment that significantly alters an employee's future employment prospects such as demotion generally meet this standard; however, minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities are not actionable under Title VII. *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1026 (8th Cir. 2004).

Plaintiffs' claim the following acts of retaliation: (1) Wickenhauser issued directives that made it difficult to interact with other officers; (2) supervisor Pat Allison "papered" their personnel files

---

711, 733 (E.D. Mich. 1999) (citing *Ratliff v. DeKalb County*, 62 F.3d 338, 340 (11th Cir. 1995); *Grossbaum v. Indianapolis-Marion County Bldg Auth.*, 100 F.3d 1287, 1296 n. 8 (7th Cir. 1996); *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir.1996); and *Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir.1989)). "The right to be free from retaliation [for making complaints of discrimination] is clearly established as a first amendment right and as a statutory right under Title VII; but no clearly established right exists under the equal protection clause to be free from retaliation." *Ratliff*, 62 F.3d at 340. Therefore, Plaintiffs did not state a claim of retaliation under § 1983.

13

following their complaint; (3) Plaintiffs received performance evaluations three months after the completion of the harassment investigation; (4) Plaintiffs were ostracized by co-workers following their complaint; (5) co-workers who buttressed Plaintiffs' claims of harassment were retaliated against; (6) Murphy did not receive equitable compensatory time; (7) Weger did not receive equitable overtime; and (8) Weger was not included in the training of road officers.

These complaints do not establish an actionable claim of retaliation. Wickenhauser's directives were issued to the entire Department. The directives may have made it difficult for the communications employees to interact with other officers, but a minor change in Plaintiffs' working conditions is not actionable under Title VII. Plaintiffs' complaints of poor performance reviews and the papering of their files also hold no weight. Neither a negative performance review nor the "papering" of a personnel file constitute an adverse act unless the employer subsequently uses them to alter the terms or condition of employment to the employees detriment. *Baucom v. Holiday Cos.*, 428 F.3d 764, 768 (8th Cir. 2005); *Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 992 (8th Cir. 2003). Plaintiffs alleged no actions by the Department as a result of the file papering or the performance review, therefore there was no adverse employment action. Plaintiffs complaints of co-ostracization are also not actionable. "[W]ithout evidence of some more tangible change in duties or working conditions that constitute a material employment disadvantage, general allegations of co-worker ostracism are not sufficient to rise to the level of an adverse employment action for purposes of Title VII." *Scusa v. Nestle U.S.A. Co., Inc.*, 181 F.3d 958, 969-70 (8th Cir. 1999).

Further, Plaintiffs lack standing to sue for retaliation based on actions taken against their co-workers. To meet the constitutional requirements of standing, a plaintiff "must allege personal injury

fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Because Plaintiffs suffered no personal harm from the retaliatory action taken against their co-workers, they cannot bring suit. Finally, Plaintiffs provided no basis to support their final three complaints: that they received less compensatory time and overtime than other employees, and that Weger was improperly excluded from a road test. The Court cannot deny a summary judgment motion based on mere allegations.

Plaintiffs were not terminated. Nor were they subject to a salary decrease, reduction in benefits, demotion, or any other significant change in their employment. Their complaints do not constitute actionable retaliation under Title VII or the MHRA. Weger and Murphy did not suffer any adverse employment action, therefore they have not established a *prima facie* case of retaliation.

## CONCLUSION

Plaintiffs have not established a *prima facie* case of hostile work environment sexual harassment or of retaliation. Therefore, Defendants' Motion for Summary Judgment (#53) is granted and Plaintiffs' complaint is dismissed in its entirety.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Motion for Summary Judgment (#53) be and is **GRANTED**. Plaintiffs' cause of action is **DISMISSED**.

**IT IS FURTHER ORDERED** that all remaining motions are **DENIED** as moot.

Dated this 8th day of March, 2006.

_____
SENIOR UNITED STATES DISTRICT JUDGE